HELEN QUICK, as Administratrix of the Estate of WILLIAM F. QUICK, Deceased, Respondent, v. AMERICAN CAN COMPANY, Appellant.

Negligence — hostile witness — when party may contradict her own witness — failure of proof of care by plaintiff's intestate.

In an action to recover for the death of plaintiff's intestate on the ground of the negligence of defendant, the only eye-witness of the accident called by the plaintiff is claimed by her to have been interested and hostile. Held, on examination of his evidence, that while the plaintiff vouched for his credibility to a certain extent by placing him on the stand, she had the right to claim that he was mistaken and to contradict him, not for the purpose of impeachment, but to prove the facts as they really were. But she called no one to con-

tradict him, and when his testimony is so analyzed and separated
as to place on one side all that is favorable to the plaintiff, and on
the other all that is favorable to the defendant, accepting the one
as true and rejecting the other as false, still the plaintiff failed to
meet the burden of proof cast upon her by law of furnishing some
evidence that the intestate exercised some care.

*Quick* v. *American Can Co.*, 146 App. Div. 939, reversed.

(Argued April 4, 1912; decided April 30, 1912.)

APPEAL from a judgment of the Appellate Division of
the Supreme Court in the first judicial department,
entered October 31, 1911, affirming a judgment in favor
of plaintiff entered upon a verdict.

In May, 1908, the plaintiff's intestate, while in the
employ of the defendant, lost his life under the following
circumstances according to the uncontradicted evidence:
In a building owned and occupied by the defendant,
eight stories high, there were two Otis electric passenger
elevators side by side in the same shaft, separated by
" I " beams laid at right angles to the respective entrance
floors and on the same level therewith.   Counterweights
four or five inches square and between two and three feet
long ran in uninclosed grooves extending from the " I "
beam on the first floor to the top of the shaft and came
down on either side of the beams subdividing the shaft.
The grooves nearest the door were about eighteen inches
from the entrance side of the shaft and it was about
thirty inches from the door of the shaft to the " I " beam.
At the bottom of the shaft was a pit three feet deep below
the first floor.   Outside of the shaft on each floor was the
usual indicator to show where the elevator was as it
went up and down, the hand on the dial being moved by
a cord inside the shaft.   Adjustment of the dial could be
made from outside the shaft, but of the cord from the
inside only and on the first floor only when the elevator
was above that floor.   The elevator was operated by a
lever in the ordinary way and the electric power could be
shut off by a switch in the engine room in the exclusive

charge of the engineer. Quick, the decedent, had worked for the defendant as porter and assistant to Conger, the superintendent of the building, for more than a year and had occasionally repaired and adjusted the cords of the indicator.

On the 28th of May, 1908, Quick informed Conger that the indicator of the south elevator was out of order on the ground floor, said he could fix it and was told to do so if he knew how. He asked Conger to go with him and the two men went to the ground floor together, Quick in advance carrying a very short ladder and some simple tools. At first, Quick, standing on the ladder, tried adjustment from the outside and had the elevator run up and down as he was working so as to observe the effect of his work upon the dial. This effort did not succeed and he then placed the ladder inside the shaft, resting the lower rung on the " I " beam about two and one-half feet from the door with the top against the south guide. The guides in which the counterweights ran separated the ladder therefrom and formed a substantial barrier thereto. After thus putting his ladder in a place where he could have used it in safety he told the operator to go up and then, without using the ladder, suddenly jumped into the pit for some undisclosed purpose, without notice to any one and the counterweights came down and crushed him. When Quick jumped into the pit Conger stood in a stooping position with his back to the elevator engaged in gathering up the tools to put them out of the way and hearing a queer noise he jumped into the pit also and found the decedent under the counterweights fatally injured. The ladder was not disturbed but was in the position where it had been placed. Conger knew nothing about making such repairs and he gave no directions to Quick, the operator or the engineer.

The jury found a verdict for the plaintiff and the judgment entered thereon was affirmed on appeal by the Appellate Division, one of the justices dissenting.

*Irving W. Teeple* and *William A. Jones, Jr.*, for appellant. The complaint should have been dismissed, since there was no evidence to show freedom from negligence on the part of the plaintiff. (*Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 332; *Bond* v. *Smith*, 113 N. Y. 385; 425; *Wiwirowski* v. *L. S. & M. S. Ry. Co.*, 124 N. Y. 425; *Wieland* v. *D. & H. C. Co.*, 167 N. Y. 27.)

*Thomas J. O'Neill* and *L. F. Fish* for respondent. There was no contributory negligence. (*Hawley* v. *R. R. Co.*, 82 N. Y. 340; *Smith* v. *King*, 74 App. Div. 3; *Doing* v. *R. R. Co.*, 151 N. Y. 579; *Van Alstine* v. *Power Co.*, 128 App. Div. 58; *Dowd* v. *R. R. Co.*, 170 N. Y. 466; *Harrison* v. *R. R. Co.*, 195 N. Y. 86; *Jones* v. *R. R. Co.*, 28 Hun, 364; *Monck* v. *R. R. Co.*, 182 N. Y. 567; *Hart* v. *R. R. Co.*, 80 N. Y. 622.)

VANN, J. On each of the three trials of this action there was a verdict for the plaintiff. In denying the motion of the defendant made on the minutes to set aside the verdict on the last trial, the presiding justice said: "The verdict upon both former trials was set aside upon motion by the learned justices who presided, and I am in accord with their opinion that the evidence does not warrant a verdict for the plaintiff. If this were the first or even the second trial I should grant the defendant's motion unhesitatingly." The motion, however, was denied upon the ground that the trial justice should not again interfere with the judgment of the jury upon disputed questions of fact.

Although notice under the Employers' Liability Act is alleged in the complaint; none was offered on the last trial, which proceeded on the theory of negligence according to the common law. All the evidence tending to show how the accident occurred was given by Mr. Conger, a witness called by the plaintiff and claimed by her to be interested and hostile. She insists that the jury could

believe the part of his evidence that was favorable to her and reject the rest and that thus the verdict finds sufficient support.

Assuming that there was evidence to show negligence on the part of the defendant, still the burden was upon the plaintiff to furnish some evidence to show that her intestate was free from contributory negligence. It was not incumbent on the defendant to show that the decedent was negligent, but on the plaintiff to show he was not negligent. Even if the testimony of Conger, the only eye-witness, in so far as it was unfavorable to the plaintiff is rejected *in toto*, still there is nothing to take its place and no evidence tending to show that the decedent was free from negligence on his part. The jury could not find that Quick was careful because they gave no credence to Conger's testimony that he was careless. They could not find freedom from fault without some evidence, direct or circumstantial, tending to show it and there was none. No witness was called by the defendant and no witness saw any part of the accident except Conger and if his testimony is true, the decedent was shown to be guilty of contributory negligence as matter of law. If his testimony is false, either wholly or as to any parts that may be selected, still there is no evidence of the absence of contributory negligence. While the plaintiff vouched for his credibility to a certain extent by placing him on the stand, she had the right to claim that he was mistaken and to contradict him, not for the purpose of impeachment but to prove the facts as they really were. She called no one to contradict him and when his testimony is so analyzed and separated as to place on one side all that is favorable to the plaintiff and on the other all that is favorable to the defendant, accepting the one as true and rejecting the other as false, still the plaintiff failed to meet the burden of proof cast upon her by law of furnishing some evidence that the intestate exercised some care. According to either theory he assumed control of

the situation, chose his own method and voluntarily went into the pit, a place of known and obvious danger, without taking any precaution to protect himself. He unnecessarily exposed himself to the descending weights. After making preparation to stand on the ladder in a safe place, he abruptly and without any apparent excuse or reason, left the ladder unused and went directly beneath the weights, which were in plain sight coming down upon him. There is no evidence that he was told to go into the pit and none to warrant the inference that he went there except on his own motion. He knew the situation. The grooves were not cased or concealed and the counterweights running therein could be plainly seen. The elevator had been kept in motion by his express direction in order to enable him to do his work efficiently. Even if he did not direct the operator to run it up just before he jumped into the pit, as Conger testified, he knew the power was on and that if it was run up the counterweights would come down and endanger any one who was in the pit. Instead of using the ladder which would have been safe, or waiting until the elevator reached the top floor when the counterweights would have been down and no longer dangerous, he jumped into the pit, which was unsafe, without, so far as appears, giving any notice of his intention, making any request that the elevator should not be moved, or doing or saying anything to protect himself from a danger as obvious as it was extreme.

As there was no evidence tending to show that the decedent was free from contributory negligence, the motion of the defendant for a nonsuit should have been granted.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment reversed, etc.