DICK v. STEEL & MASONRY CONTRACTING CO.

(Supreme Court, Appellate Division, First Department.    December 6, 1912.)

1. MASTER AND SERVANT (§ 125*)—INJURY TO SERVANT—SAFE PLACE TO WORK.
     Where an employé in the erection of a steel structure attempts, under the direction of his foreman, to walk over a slippery and greasy beam, over which it was dangerous to walk, and the condition of which was apparent and had been pointed out to the foreman before the accident, with the unheeded request that he construct a safe walk, the master is liable for the employé's death from slipping from the beam.
     [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 243–251;  Dec. Dig. § 125.*]

2. TRIAL (§ 165*)—NONSUIT—EVIDENCE.
     A nonsuit is proper only when the plaintiff would not be entitled to judgment under the most favorable inferences deducible from the evidence.
     [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 373, 374;  Dec. Dig. § 165.*]

3. MASTER AND SERVANT (§ 270*)—INJURY TO SERVANT—EVIDENCE.
     In an action for the death of plaintiff's decedent from falling from a freshly painted and slippery steel beam upon which he was working, it

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

was error to exclude evidence of a custom to provide planking to furnish a safe walk for employés.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. § 270.*]

4. MASTER AND SERVANT (§ 270*)—INJURY TO SERVANT—EVIDENCE.

In an action for the death of plaintiff's decedent from falling from a freshly painted and slippery steel beam upon which he was working, evidence of the slippery condition of the steel work should have been admitted upon the question of the. employer's failure to fulfill his duty to provide his employé with a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. § 270.*]

5. MASTER AND SERVANT (§ 288*)—INJURY TO SERVANT—JURY QUESTION.

In an action for the death of plaintiff's decedent from falling while attempting to walk over a slippery steel beam upon which he was working, the question whether the deceased assumed the risk of using the beam, was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

Appeal from Trial Term, New York County.

Action by Marie Dick, as administrator, etc., against the Steel & Masonry Contracting Company. From judgment dismissing complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Francis X. McCollum, of New York City, for appellant.

M. L. Malevinsky, of New York City, for respondent.

SCOTT, J. Appeal from judgment entered upon a dismissal of the complaint at Trial Term. The action is for damages for the death of plaintiff's decedent, who died in consequence of a fall from a steel structure which he was employed in erecting.

[1] The deceased, who was an experienced workman in the erecting of steel buildings, was employed by defendants, who were constructing a steel and concrete grand stand at a baseball park in the city of New York. At the time of the accident deceased was at work on the lower chord or member of an iron truss, which formed a part of what is described as a panel of the grand stand. This panel was constructed as follows:

"On the north and south ends of the front stood perpendicular iron columns about 40 feet apart. The ends of the upper and lower chords of a truss were attached to these two columns; the chords running horizontally between them, at a distance of 12 or 14 feet from each other along the entire length, and on each side of the lower chord, which was about 8 or 10 inches high, was a horizontal flange or angle about 5 inches in width. Two gusset plates of solid iron, about 3½ feet wide, were connected perpendicularly to the upper and lower chords of the truss; the centers of the gusset plates being about 12 feet distant from each other and about 15 feet distant from the north and south columns, respectively. Crosspieces ran diagonally from the bottom of the gusset plates to the upper chord, meeting in the center of the spaces between the two gusset plates and between the gusset plates and the two columns, respectively. The lower chord of the truss was connected with the rear of the panel by four chords or struts, which ran horizontally

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

from the east or front of the panel to the west or rear of it, from each column and each gusset plate, respectively. The two center struts, which connected with the center of the gusset plates, were about 12 feet apart, and the distances between the struts that connected with the gusset plates and those that connected with the north and south columns, respectively, were about 15 feet."

At the time of the accident, deceased, as a part of his work, was assisting in the operation of moving a traveling derrick, which was on top of the truss, from one panel to another, and was proceeding along the lower chord from the south to the north column, where he had to be, and where he was to unfasten a turnbuckle. While crossing from the south toward the north column, he was carrying a bolt which he was to use in unfastening the turnbuckle, and which he had just used in a similar operation on the south column. He had proceeded along the lower chord as far as the north end of the north gusset plate. While he was turning around the gusset plate at that point, and was holding on with one hand, and after he had stepped over the chord with his left foot and rested it on the flange on the other side, and was about to raise his right foot to walk to the north end of the panel, he slipped and fell.

It was testified to that the only way in which the deceased could pass from the south to the north column in order to perform the particular piece of work to which he had been assigned was along the chord, as he attempted to do. It was also in evidence that the chord, and the other steel work, had been freshly or recently painted, and was, in consequence, slippery and greasy—so much so that the paint came off upon the gloves of the workmen engaged in handling the steel. There was no plank or other runway by which deceased and other workmen could pass from one column to the other, and no planks were provided out of which the men could themselves construct such runways. The defendant's foreman had been warned, before the accident, that it was unsafe to pass to and fro along the steel structure, and had been asked by some of the workmen to furnish planks or boards with which a runway or place to walk could be constructed, but he had refused to furnish them, saying that there were none, and directed the men to get along without them.

[2] In determining the correctness of the nonsuit, the plaintiff is entitled to the most favorable inferences deducible from the evidence. We therefore assume, for the purpose of this appeal, that the paint upon the steel was slippery and greasy, as testified to by the plaintiff's witnesses; that this condition must have been apparent to the foreman; that this condition rendered it dangerous to walk upon the chord; that this danger had been pointed out to the foreman before the accident, and he had been requested to furnish means to construct a safe runway or walk, and had refused, and had directed the men to pass to and fro on the steel.

[3] The plaintiff offered to show by witnesses of large experience in steel erection that it was customary in doing work of that character to provide planking in order to furnish a safe place for the men to work upon. This was objected to, and excluded, not upon the ground that the questions were improperly framed, but apparently

upon the ground that any such custom, if it existed, would not be applicable to the conditions existing when deceased fell. The force of the objection is not entirely clear, for it is not apparent how it could be ascertained whether or not the custom applied, unless it were permitted to be shown that such a custom existed and under what circumstances it obtained. In our opinion this evidence should have been received.

Without it, however, we think that there was sufficient to raise a question for the jury as to whether or not the defendant had done its full duty in providing for deceased a safe place to work. It is a matter of common knowledge that the erection of modern steel structures is, at the best, a dangerous occupation; but this fact does not justify an employer in refusing to adopt all reasonable precautions to minimize the danger. On the contrary, it should serve as an inducement to employers to endeavor, so far as possible, to lessen the risks of the work. Whether or not the employer fulfilled his complete duty in the case depends upon the conditions which existed at the time. Under some circumstances, it might be reasonably safe to permit and direct the workmen to proceed from one part of the work to another by means of the steel chords and beams. Under other circumstances, it might be very unsafe.

[4] In view of the slippery and greasy condition of the steel, and the warning given to the foreman before the accident that it was unsafe to use the chord as a passageway, a jury would have been justified in finding that the defendant failed in its duty to furnish deceased a safe place in which to do his work. There was also evidence excluded as to the slippery condition of the steel work. This we think is error, because that was one of the conditions which bore upon the employer's failure to fulfill his duty to his employé.

[5] The question as to whether or not deceased assumed the risk of using the chord was primarily a question for the jury, and since the accident happened after the passage of chapter 352, Laws 1910, the question of decedent's contributory negligence, if there be any such question in the case, was a defense, to be pleaded and proved by the defendant.

For these reasons, the judgment appealed from must be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.