successive days, filed eight separate certificates, designating in each a single route, we think that it would not be contended that these eight certificates were to be read together as constituting a single extension. The fact that eight unrelated routes, separately described, were included in a single instrument, cannot make any difference as to the construction or meaning thereof.

The order should be reversed, with $10 costs and disbursements, and the motion for a peremptory writ of mandamus should be denied, with $50 costs. All concur.

(158 App. Div. 210.)

### WEBSTER v. RICHMOND LIGHT & R. CO.

(Supreme Court, Appellate Division, Second Department.   July 25, 1913.)

1. WITNESSES (§ 402*)—CONTRADICTING ONE'S OWN WITNESS.

While one by placing a witness on the stand vouches for his credibility to a certain extent, yet, if there is anything in his testimony which operates against her, she may claim he was mistaken as to that, prove the facts as they really were, and ask that such inferences be drawn as are really warranted by the other evidence in the case.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1268; Dec. Dig. § 402.*]

2. ELECTRICITY (§ 19*)—INJURY FROM ESCAPE—CARE REQUIRED—CUSTOMARY DEVISES.

Evidence, in an action against an electric light company for a death of a person in a house through a high voltage current escaping from a primary to a secondary wire, the transformer having gotten out of order, that it was customary for such companies to use a devise, not used by defendant, which would prevent such flowage, is admissible.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

3. ELECTRICITY (§ 19*)—INJURY FROM ESCAPE—NEGLIGENCE—EVIDENCE.

Evidence, in an action against an electric light company for injury to one, turning the switch in a dwelling, from a high voltage current which had escaped from the primary to the secondary wire *held* to make a case for the jury on the question of negligence.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

4. ELECTRICITY (§ 14*)—INJURY FROM ESCAPE—CARE REQUIRED.

Where a corporation, for its profit, assumes to control the distribution of electricity, it must exercise at least reasonable care to prevent its escape in a death-dealing manner.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 7; Dec. Dig. § 14.*]

5. ELECTRICITY (§ 19*)—INJURY FROM ESCAPE—NEGLIGENCE—EVIDENCE.

The escape to a dwelling supplied by an electric light company, of a high voltage current, causing death, is, in the absence of explanation, evidence of negligence, regardless of direct proof of defective appliances; being a thing which in the ordinary course of business does not happen if reasonable care is used.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

6. DEATH (§ 76*)—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

While plaintiff, in an action for death from negligence, has the burden of showing deceased used due care, this, while it must be established af-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

firmatively, need not, where there is no eyewitness, be proved by testimony addressed directly to its support, but may be shown by evidence of circumstances which exclude fault.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 94; Dec. Dig. § 76.*]

7. ELECTRICITY (§ 19*)—INJURY FROM ESCAPE—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

Evidence, in an action for death to one, when turning the switch in a dwelling, from a high voltage current of electricity, which had escaped to the wire of the electric company leading into the house, *held* to make the question of contributory negligence one for the jury.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

Appeal from Trial Term, Richmond County.

Action by Julia Webster, administratrix, against the Richmond Light & Railroad Company. From the judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

Rutherford B. Meyer, of New York City, for appellant.
E. Clyde Sherwood, of New York City, for respondent.

STAPLETON, J. The plaintiff appeals from a judgment entered against her, dismissing her complaint at the close of her case. The action was brought to recover damages for neglect of the defendant whereby the death of her intestate was caused.

The decedent was employed as an assistant to the engineer in the City Farm Colony, an institution established and maintained by the city of New York. His general work was to make minor repairs to the plumbing, heating, and electrical apparatus about the buildings of the colony. On the farm are seventeen buildings, one of which is known as the Burke building and used as a dormitory, with accommodation for about 200 aged and indigent women.

The defendant, a public service corporation, supplied electric current for illuminating purposes to the buildings, including the Burke building. It owned, controlled, and maintained a generating plant, poles, wires, transformers, and pole conduits. The transformer is a device designed to reduce the voltage, and in this case the reduction was from 2,200 to 110. It was attached to a pole near the building, and from it two sets of wires, incased in leads or mains, carried the low voltage current down the pole and into the building. The wires and connections between the transformer and the switchboard were in excellent condition. In the transformer there were three coils of wire around the high potential coil, operated at 2,200 volts, and two others, each delivering 110 volts, to what is known as the secondary circuit. A witness, skilled in electrical engineering, found, shortly after the casualty, one secondary coil intact and the other secondary coil broken down, as to insulation, to the primary winding. He also found that there was an electrical connection between the primary coil, operating

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on 2,200 volts, and the secondary coil, from which was delivered 110 volts for the operation of the lamps; that the inside of the transformer showed burns on the connection plate, caused by an electric current; that there was a breakdown between the primary winding and the secondary winding; that there was a breakdown between the right-hand primary coil and the right-hand secondary coil; that the two windings are entirely distinct from each other and are separated electrically unless there is such a breakdown; that the tests showed there was a specific breakdown between the primary winding and one-half of the secondary winding, there being two secondary coils in the transformer. The result was to establish on the secondary system of wiring, a wire of which entered the building and connected with the switchboard, a pressure or electric potential equivalent to that on the primary system, namely, 2,200 volts. Twenty-two hundred volts is a fatal force; 110 volts are comparatively harmless.

On the 24th day of July, 1911, at 3 o'clock in the afternoon, the plaintiff's intestate was working around the kitchen of the Burke building, repairing a boiler valve. A fellow workman noticed a blaze coming from a chandelier in the vestibule adjoining the kitchen. The blaze was fan-shaped and about 8 feet long. The attention of the decedent was attracted to the blaze. He procured a ladder and a patent fire extinguisher and ascended the ladder, bringing the extinguisher with him, and played the extinguisher upon the blaze. The blaze went out and the decedent descended the ladder. There was a resumption of the blaze, the second blaze being about 2½ feet long. A witness was permitted, without objection, to testify that the deceased said he would run down and turn off the switch, and he thereupon suited his action to his word. That was the last his fellow workman saw of him in life. The canopy from which the blaze descended was not equipped with bulbs for lighting purposes at the time. The decedent obtained the key to the boiler room from a nurse who was in charge of the building. He came in to her in a hurry and asked for the key. About 15 minutes afterwards the dead body of the decedent was found by the nurse, lying on the floor of the boiler room, under the switchboard. He had been killed by a deadly current of electricity. His right hand had evidences of deep charred burns, penetrating to the bone. The cause of death was cardiac paralysis, due to contact with a wire charged with commercially prepared electricity. The switchboard was adjacent to the entrance door of the boiler room and was raised about 3 feet from the floor. The boiler room was about 25 feet square and contained 2 windows, each about 25 inches square. The windows were about 15 feet away from the switchboard, on the opposite side of the room. There was no eyewitness to the casualty.

The secondaries from the transformer were not grounded. A skilled witness did not notice any lightning arresters on the overhead circuit from the Farm Colony connected with the station. Another skilled witness described and defined a lightning arrester as follows:

"A lightning arrester is a device which is connected to line wires which are commonly exposed to the effects of electrical storms. This device carries a wire which is connected to receive, and by certain arrangements of terminals or electromagnetic means, moving parts or otherwise, the conditions

are so arranged that the high frequency lightning discharged, instead of traveling along those wires and proceeding into buildings and expensive apparatus, will be deflected into the ground, and do no damage."

There was evidence that prior to the casualty an electrical storm was in progress, but that the lightning feature of it had subsided about a half hour previously, although the rain continued.

[1] A skilled witness, called on behalf of the plaintiff and adopted by the defendant, testified that at the time he made his examination of the transformer he did not determine from his examination whether the breakdown in the transformer was due to lightning; that there was no primary evidence that lightning struck the transformer; and that there was no lightning indicated in the transformer. He gave his opinion that the lightning struck the primary lines leading to the transformer and then went to the transformer; that the pulling on the switch would have the effect of stopping the blaze from the canopy; and that the switchboard was of ordinary construction. Concerning the testimony of this witness it may be said that, while the plaintiff vouched for his credibility to a certain extent by placing him on the stand, if there was anything in his testimony which operated against her, she had the right to claim he was mistaken as to that, to prove the facts as they really were, and to ask that such inferences be drawn as were really warranted by the other evidence in the case. Quick v. American Can Co., 205 N. Y. 330, 334, 98 N. E. 480.

[2] The plaintiff offered to show by a qualified witness that it was customary for illuminating companies to use a device, not used by the defendant, which would prevent high voltage from flowing from primary to secondary wires and thence into buildings. This was objected to, excluded, and an exception taken. This ruling was erroneous and would of itself require the reversal of the judgment of nonsuit. Gray v. Siegel-Cooper Co., 187 N. Y. 376, 381, 80 N. E. 201; Dick v. Steel & Masonry Contracting Co., 153 App. Div. 651, 654, 138 N. Y. Supp. 700; Flanagan v. Carlin Construction Co., 134 App. Div. 236, 239, 118 N. Y. Supp. 953.

[3-5] We are of the opinion that the case as it stood should have been submitted to the jury upon the question of the defendant's negligence and the freedom of the plaintiff's intestate from contributory negligence. Where a corporation, for its profit, assumes to control the distribution of a substance as dangerous to human life as electricity when the current is maintained at a high voltage, it is its duty to exercise at least reasonable care to prevent its escape in a death-dealing manner. Braun v. Buffalo General Electric Co., 200 N. Y. 484, 492, 94 N. E. 206, 140 Am. St. Rep. 645, 21 Ann. Cas. 370; Caglione v. Mt. Morris Electric Light Co., 56 App. Div. 191, 193, 67 N. Y. Supp. 660; Paine v. Electric Illuminating, etc., Co., 64 App. Div. 477, 479, 72 N. Y. Supp. 279; Wagner v. Brooklyn Heights R. Co., 69 App. Div. 349, 350, 74 N. Y. Supp. 809, affirmed 174 N. Y. 520, 66 N. E. 1117; Morhard v. Richmond Light & R. Co., 111 App. Div. 353, 356, 98 N. Y. Supp. 124. When we contemplate the proven defects in the transformer, the absence of a lightning arrester, and the proof of the other circumstances hitherto recited, we are unable to perceive

a distinction between this case and that of Morhard v. Richmond Light & R. Co., supra, in which the defendant was held to be negligent.

The force causing the death of the defendant, lethal in its nature unless properly contained, being in the control of the defendant, and the casualty being such as in the ordinary course of the business does not happen if reasonable care is used, proof of these circumstances, regardless of direct proof or defective appliances, affords, in the absence of explanation, sufficient evidence that the accident occurred from want of care on defendant's part. Breen v. N. Y. C. & H. R. R. Co., 109 N. Y. 297, 300, 16 N. E. 60, 4 Am. St. Rep. 450; Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630; Clancy v. N. Y. & Queens Co. Ry. Co., 82 App. Div. 563, 569, 81 N. Y. Supp. 875; Smith v. Boston Gaslight Co., 129 Mass. 318. In the case last cited it was held that the escape of gas from the pipes of a gas company was prima facie evidence of negligence.

[6, 7] Upon the issue of contributory negligence the evidence presents as full a disclosure of the facts and circumstances as the nature of the case allows. The burden is, of course, upon the plaintiff to show that her intestate exercised due care, and, although it must be established affirmatively, it need not, in a case where there is no eyewitness to the occurrence, be proved by testimony addressed directly to its support, but may be shown by evidence of circumstances which exclude fault. The switchboard and its appliances were ordinarily harmless. There was nothing to manifest danger at the time of the injury, and the decedent had no reason to suppose that the switchboard or its parts had suddenly become deadly. The decedent was where he had a right to be. He was engaged in a laudable, proper, and appropriate service when he pulled the switch. There is nothing that excludes the inference that he acted in the usual manner in operating the switch handle. The question of contributory negligence was for the jury. Baxter v. Auburn & Syracuse El. R. Co., 190 N. Y. 439, 441, 83 N. E. 469; Schmeer v. Gaslight Co., 147 N. Y. 529, 541, 42 N. E. 202, 30 L. R. A. 653; Braun v. Buffalo General Electric Co., supra; Paine v. Electric Ill. Co., supra; Morhard v. Richmond Light & R. Co., supra; Smith v. Boston Gaslight Co., supra; Illingsworth v. Boston Electric Light Co., 161 Mass. 583, 588, 37 N. E. 778, 25 L. R. A. 552.

In Baxter v. Auburn & Syracuse El. R. Co., supra, the court said:

"It is necessary in these cases, when a defendant is sought to be charged with the consequences of the neglect of a duty to exercise care, that the person injured, as the result of that neglect, shall not appear to have contributed to the injury by his own negligence. It must, affirmatively, appear that his conduct did not so concur with the defendant's negligence, and enter into the incident, as to have become a proximate cause of the injury. He must have exercised that degree of care which was commensurate with the situation. That may be shown, directly, through the testimony of eyewitnesses; or it may appear from circumstances, which permit the jurors, fairly, to infer the fact. When, by reason of the death of the injured person, his mouth is closed, the burden, nevertheless, remains upon the complainant, upon whom the cause of action has devolved, to show, affirmatively, by direct evidence, or from surrounding circumstances, that the deceased was without fault. When the evidence as to how he conducted himself is confined to inferences from circumstances, the courts, where the defendant's con-

duct has been flagrantly violative, in one way or another, of the duty owing, have been inclined to relax the application of the rule as to the quantum of proof, and greater latitude is allowed in permitting the inference of an exercise of ordinary care. If, in such case, the surrounding facts and circumstances, reasonably, indicate that the accident might have occurred without negligence in the deceased that inference becomes possible, in addition to that which involves careless conduct, or a willful disregard of personal safety, and thus, as a question of fact, it would be for the jury to decide between the two possible inferences."

I advise that the judgment be reversed, and a new trial granted; costs to abide the event. All concur.