TEXAS POWER & LIGHT CO. v. BRISTOW et al. (No. 6095.)

(Court of Civil Appeals of Texas. June 4, 1919. Rehearing Denied July 5, 1919.)

1. ELECTRICITY ⬉19(2, 3)—DEATH DUE TO SHOCK—DOCTRINE OF RES IPSA LOQUITUR—APPLICABILITY.

Petition, alleging that electric shock resulting in death of plaintiff's husband was proximately and directly caused by negligence of defendant "in permitting a dangerous, excessive, and deadly current of electricity to traverse the wire running to and into said house of deceased," sufficiently alleged manner in which injury occurred; the doctrine of res ipsa loquitur being applicable in case of death by electric shock.

2. ELECTRICITY ⬉19(4) — PERMITTING EXCESSIVE CURRENT TO BE CONDUCTED INTO HOUSE OF CONSUMER.

Evidence as to the construction of wires in the alley in the rear of the residence of deceased, from which wires electricity was conducted into the house of deceased, was pertinent to the inquiry as to whether defendant was negligent in permitting an excessive current of electricity to enter deceased's residence.

3. ELECTRICITY ⬉19(4)—DEATH BY SHOCK—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

Testimony of a witness that he had placed a porcelain socket in residence of deceased and had told plaintiff, deceased's wife, that the socket-

et was safe, and testimony of the wife that she had told deceased just before deceased attempted to attach electric iron to socket that electrician had told her there was no danger in using same, was pertinent on issue of contributory negligence of both deceased and plaintiff.

**4. EVIDENCE ⬥⇒141—OTHER OCCURRENCES—ELECTRIC SHOCK.**

In action for death of husband due to his receiving electric shock while attempting to connect electric iron to socket in his residence, evidence as to electric shocks received by others in their homes a few days before the death of deceased was admissible; electricity being supplied to others through same transformer.

**5. APPEAL AND ERROR ⬥⇒930(1), 994(2)—REVIEW—SUFFICIENCY OF EVIDENCE.**

The jurors are the exclusive judges of credibility of witnesses, and weight to be given to their testimony, and in determining whether or not the verdict is supported by the evidence, the court on appeal will look only to the evidence in support of the verdict.

**6. ELECTRICITY ⬥⇒19(5)—PROXIMATE CAUSE OF DEATH—EXCESSIVE CURRENT.**

Evidence *held* sufficient to sustain verdict that deceased came to his death by reason of receiving a shock from an excessive current of electricity, while attempting to attach an electric iron to a socket in his residence.

**7. ELECTRICITY ⬥⇒19(3) — SUPPLYING TO DWELLING—NEGLIGENCE—EXCESSIVE VOLTAGE.**

Deceased's death being the result of an electric shock resulting from an excessive voltage, defendant which furnished electricity to deceased's dwelling had the burden of showing that excessive voltage was not due to its negligence.

**8. APPEAL AND ERROR ⬥⇒1067—FAILURE TO INSTRUCT AS TO MEANING OF TERMS—HARMLESS ERROR.**

In action for death of husband due to his receiving electric shock while attempting to connect electric iron to socket in his residence, failure to instruct as to meaning of "preponderance of evidence" *held* not harmful error.

**9. TRIAL ⬥⇒234(7) — INSTRUCTION — BURDEN OF PROOF.**

Where the case was submitted upon special issues and in each instance the jury was instructed to return an answer in accordance with the preponderance of the evidence, there was a sufficient charge as to the burden of proof.

**10. TRIAL ⬥⇒260(8) — INSTRUCTIONS SUFFICIENTLY GIVEN—REFUSAL.**

The court did not err in refusing to give defendant's special requested charge with reference to contributory negligence of deceased, where the same was substantially given in the questions submitted.

**11. PLEADING ⬥⇒392—VARIANCE.**

Since petition alleged plaintiff's name as Mrs. G. C. B., wife of G. C. B., deceased, contention that judgment should not be entered for her for the reason that the evidence showed her name to be Ola Mae B., will be overruled.

**12. TRIAL ⬥⇒118, 121(2)—CONDUCT AND ARGUMENT OF COUNSEL.**

Counsel had the right to state to the court his understanding of the testimony in discussing the admissibility, and also the right to state to the jury what he considered to be the law of the case, if it was not contrary to any instruction given by the court.

**13. DEATH ⬥⇒99(4)—DAMAGES—AMOUNT.**

For the death of husband and father, 31 years old, in good health, of exemplary habits and earning over $2,000 a year, a verdict of $28,000 in favor of wife and children *held* not excessive.

Appeal from District Court, Bell County; F. M. Spann, Judge.

Suit by Mrs. G. C. Bristow and others against the Texas Power & Light Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

W. W. Hair, of Temple, and Templeton, Beall, Williams & Callaway, of Dallas, for appellant.

A. L. Curtis, of Belton, and Winbourn Pearce, of Temple, for appellees.

### Findings of Fact.

JENKINS, J. This suit was brought by appellee, the wife of G. C. Bristow, for the benefit of herself and the three children of herself and deceased husband.

The appellant was engaged in the business of manufacturing and furnishing electricity to its customers in the city of Temple, and among others to the deceased and his wife. The deceased was killed by being shocked by electricity in his bathroom March 6, 1918. The electricity was conducted into the dwelling of deceased over wires owned by and under the control of appellant. Such ownership and control extended only to and not in the residence of deceased. The inside wiring was owned by the deceased, and appellant had no control over the same.

Appellee alleged that the deceased, while connecting an electric iron to a socket in the bathroom of his residence, received a severe shock and burn, and injuries which directly and proximately caused his death, and that the same was occasioned by the negligence of the appellant in permitting a "dangerous, excessive, and deadly current of electricity to traverse the wire running to and into said house of deceased"; that appellant knew, or in the exercise of ordinary care by proper inspection could and would have known, of the danger to deceased, but, notwithstanding its knowledge and duty in this behalf, carelessly and negligently failed and refused to alter, remedy, or repair the same. The deceased was 31 years of age, in good health, and an experienced railroad conductor, capable of earning, and was earning at the time of his death, something over $2,000

per annum. He was a man of exemplary habits, provided for his wife and children, and was affectionate to his children, and gave them the advantage of his advice and counsel.

The case was submitted to a jury on special issues as follows:

"Special issue No. 1: Do you find from a preponderance of the evidence that the deceased, G. C. Bristow, while attempting to use the electricity furnished him by the defendant, and while attempting to attach an electric iron to the current of electricity so furnished, or while handling said iron, received such shock of or from electricity and such injury therefrom as caused his death? Answer yes or no. Answer: Yes.

"If you have answered the foregoing special issue No. 1 in the negative, that is, 'No,' then you need not answer any further questions propounded to you; but if you have answered the foregoing special issue in the affirmative, that is, 'Yes,' then you will answer special issue No. 2.

"Special issue No. 2: Do you find from a preponderance of the evidence that at the time G. C. Bristow met his death that the defendant negligently permitted a dangerous, excessive, and deadly current of electricity to traverse the wire running to and into the house of the deceased, G. C. Bristow? Answer yes or no. Answer: Yes.

"If you have answered special issue No. 2 in the affirmative, that is, 'Yes,' then you will answer the following special issue No. 3; otherwise you need not answer special issue No. 3.

"Special issue No. 3: Do you find from a preponderance of the evidence that such negligence of the defendant, if any, was the proximate cause of the death of G. C. Bristow, as the term 'proximate cause' has hereinbefore been defined? Answer yes or no. Answer: Yes.

"Special issue No. 4: Do you find from a preponderance of all the evidence that G. C. Bristow was guilty of negligence, as the term has hereinbefore been defined to you, in taking hold of and in handling the electric iron or fixture in his home at the time and in the manner in which he did? Answer yes or no. Answer: No.

"If you have answered the foregoing special issue No. 4 in the affirmative, that is, 'Yes,' then you will answer the following special issue No. 5.

"Special issue No. 5: Do you find from a preponderance of all the evidence that the negligence of the deceased, G. C. Bristow, if any, in taking hold of and in handling the electric iron and apparatus at the time and in the manner he did caused or contributed to his injury and death? Answer yes or no. Answer: No.

"Special issue No. 6; What amount, if any, do you find from a preponderance of the evidence that the plaintiffs, Mrs. G. C. Bristow and the three minor children have been damaged by the death of the said G. C. Bristow? You will insert in the space below the amount which you find and determine from the evidence. You will apportion the amount so found, if any, between the plaintiff Mrs. G. C. Bristow and the three minor children in the amount in which you find each is entitled thereto, from the evidence in this case, writing the amount which you find each is entitled to in the space below. Answer: $28,000.00. Apportioned as follows:

To Mrs. G. C. Bristow, $10,000.00; to Katherine Bristow, $6,000.00; to Richard Bristow, $6,000.00; to Eugenia Bristow, $6,000.00."

The evidence is sufficient to sustain the findings of the jury.

## Opinion.

The appellant has set out in its brief 40 assignments of error. Many of them are in substance repetitions. They may be properly grouped under a few heads. We shall so treat them, not in the order in which they are presented in appellant's brief, but in their chronological order.

[1] Appellee, after alleging that appellant was in the business of manufacturing and supplying electricity to its customers, and that deceased was such a customer, and that his residence was being supplied with electricity over the wires of appellant, and that in attempting to connect an electric iron with a socket in his house alleged that the deceased, without fault or negligence on his part, received an electric shock which caused his death, and that such shock "was proximately and directly caused and occasioned by the negligence and carelessness of the defendant in permitting a dangerous, excessive, and deadly current of electricity to traverse the wire running to and into the said house of deceased."

Appellant excepted to this allegation as not being sufficiently specific.

It is never necessary for a plaintiff to allege anything which he is not required to prove. If the doctrine of res ipsa loquitur applies to the instant case, it was not necessary for the plaintiff, in order to make a prima facie case, to prove anything more than that the deceased received a deadly shock of electricity, which came from wires under the exclusive control of the defendant. If such current was excessive and dangerous, the defendant would be liable in damages therefor, upon the doctrine of res ipsa loquitur, unless it could show that such condition was not the result of its negligence.

We hold that the doctrine of res ipsa loquitur applies in the instant case, and hence that the allegations as to the manner in which the injury occurred were sufficiently specific. 15 Cyc. pp. 477, 478. McCray v. G. H. & S. A. Ry. Co., 89 Tex. 168–171, 34 S. W. 95; San Juan Light Co. v. Requena, 224 U. S. 89, 32 Sup. Ct. 399, 56 L. Ed. 680; Curtis on Electricity, § 597; Memphis C. G. & L. Co. v. Letson, 135 Fed. 969, 68 C. C. A. 453; 9th American Electrical Cases, 367; Alabama G. & A. Co. v. Appleton, 171 Ala. 324, 54 South. 638, Ann. Cas. 1913A, 1181; Webster, Adm'x, v. Richmond Light Co., 158 App. Div. 210, 143 N. Y. Supp. 57; Abrams v. City of Seattle, 80 Wash. 356, 111 Pac. 168, 140 Am. St. Rep. 916; Myers v. City of Independence (Mo.) 189 S. W. 816.

The doctrine of res ipsa loquitur is aptly

stated in Light Co. v. Requena, supra, as follows:

"When a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as 'in the ordinary course of things does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care."

Substantially the same statement is made in McCray v. Railway Co., supra, as follows:

"There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

In the Appleton Case, supra, the Supreme Court of Alabama said:

"The company having installed the wires and appliances to convey into plaintiff's building electricity for domestic and lighting purposes and uses, and injury having attended its presence and use, as the charge hypotheses, the doctrine of res ipsa loquitur applies to cast on the defendant the burden of negativing its negligence in the premises."

All that an average person could know, and therefore all that he would be required to allege was that the injury was the result of an excessive and dangerous current, and he would know this only because experience has taught that a current such as commonly used in lighting houses is not dangerous, and that in such case there is no danger in attaching an electric iron to a socket. This is an everyday occurrence. When injury occurs in such use, of course, there is a defect somewhere. Where and what it is is known only to experts in the use and management of electricity. "Electricity is, perhaps, the most insidious, as well as the most destructive, of the natural forces of which we are cognizant. What it is is a matter of pure speculation, for no one has ever seen it, but we have all seen victims of its deadly energy. Our knowledge of it is still so limited that we must rely on experts in electrical science for information as to the conditions which mean life or death to those who come in contact with it." Myers v. City of Independence, supra.

In M. C. G. & E. Co. v. Letson, supra, the court, referring to the fact that customers of electric plants do not know what produces injury, said: "An unexplained defect is a blameable one."

As presumably the injury would not have occurred but for some defect in the wires under the control of appellant, and the particu-

213 S.W.—45

lar defect, if any, was peculiarly within the knowledge of appellant, and ordinarily could not have been known to appellee, we hold that the court did not err in overruling appellant's exceptions to appellee's petition.

[2] The court did not err in permitting appellee's witnesses Love and Swor to testify as to the construction of the wires in the alley in the rear of the residence of deceased, from which wires electricity was conducted into the house of deceased. These facts were pertinent to the inquiry as to whether appellant was negligent in permitting an excessive current of electricity to enter the residence of deceased.

[3] The court did not err in permitting the witness Homuth to testify that he had placed a porcelain socket in the bathroom of the deceased on March 2d, and that he had told Mrs. Bristow that the socket was safe; nor was there error in permitting Mrs. Bristow to testify to these facts, and the further fact that she told her husband, just before he connected the wire attached to the electric iron, that the porcelain socket had been placed in the bathroom, and that the electrician Homuth had told her that there was no danger in using the same. This testimony was pertinent to the issue of contributory negligence alleged by appellant, both as to the deceased and as to appellee.

[4] The court did not err in permitting the witness Mooty to testify with reference to a shock received by him the day before the death of Bristow; nor in permitting the witness Breazeale to testify that a few days before the death of deceased she received an electric shock while using an iron in her home; nor in permitting the witness Johnson to testify that on the evening before Bristow's death he received a shock by turning a switch on his back gallery.

The undisputed testimony was that all of these parties received the electricity on their premises from secondary wires connected with the same transformer through which the electricity entered the house of deceased, and that the amount of electricity received by one of said parties must necessarily have been the same amount received at the same time by all parties connected with such transformer. It was the contention of appellant that the transformer had at no time prior to the death of Bristow been out of repair, and that it was in perfect condition at the time of his death; and that, such being the fact, he could not have received more than 110 volts of the electricity in his house, which was the amount usually furnished for residences; and the furnishing of which amount was not negligence on the part of appellant. The testimony further indicated that, if only 110 volts of electricity passed into the residences of parties connected with said transformer, they would not have received shocks under the circumstances they testified they did receive the same. This testimony would

at least tend to show that the transformer was not in good repair, but that there was some leakage in connection with the same, which permitted an excessive amount of electricity to pass over the secondary wires which furnished electricity to the residences of the parties named.

The main contention of appellant is raised under its assignments that the court erred in refusing to peremptorily instruct the jury to return a verdict for appellant, and in overruling its motion for new trial, for the reason that the verdict of the jury was not supported by the evidence.

[5] The jury would have been justified, under the evidence, in returning a verdict for the appellant; but they did not do so. Indeed, if we look alone to the testimony on behalf of appellant, it would have been the duty of the court to peremptorily instruct a verdict in its favor. As the jury are the exclusive judges of the credibility of witnesses and the weight to be given to their testimony, it is our duty, in determining whether or not the verdict is supported by the evidence, to look only to the evidence in support of such verdict.

The undisputed evidence shows that the electricity in the rear of the premises of deceased was conducted on five wires, all attached to the same cross-arm; that three of these wires were what are known as primary wires, which conduct electricity for the purpose of light and power, and that the voltage passing over these wires is ordinarily about 2,300; that the other two wires, known as secondary wires, receive their electricity from the primary wires through what is known as a transformer, and through which there should be conducted only about 110 volts of electricity; and also that these wires are under the exclusive control of appellant up to the point where the secondary wire connects with the inside wiring in the dwelling. An excess of electricity might pass over these secondary wires in one of two manners, either by the primary wires coming in contact with the secondary wires, or by the transformer being out of repair. If an excessive amount of electricity was conducted into the house of deceased, in either of these manners, it would be attributable to the negligence of appellant. An employé of appellant, in the presence of two other parties, tested the voltage: First, in the house adjoining the residence of deceased, which received its electricity through the same transformer; and, second, in the bathroom of the deceased, about an hour after the death of deceased. At this time the volt meter showed that only about 110 volts of electricity were passing over these wires.

The testimony further shows that a limb had been burned off a tree the day before the death of deceased, by electricity passing over a secondary wire. Appellees' witness Frank Swor, who qualified as an expert in such matters, testified that the voltage carried on secondary wires would not burn the limb in the manner that it was burned, and also that if only about 110 volts of electricity had been passing over the wires in the bathroom, the deceased would not have been injured by his contact with the same.

The testimony further showed that the porcelain socket in the bathroom was the standard socket recommended by the board of underwriters for use in bathrooms, and that porcelain was practically a nonconductor of electricity. The testimony further showed that immediately after the death of deceased, the electric iron which had been dropped on the floor was burning the linoleum; and the witness Swor testified that this would not have been the case if only 110 volts had been passing over the wire in the bathroom.

The witness Moody testified that on the day before the death of deceased he got a shock from an electric motor, which was being run by a secondary wire with the same connection as the wire in the bathroom of the deceased; and Mrs. Breazeale testified that a few days before the death of deceased she experienced an electric shock from an electric iron, and also from a Victrola in her home. The witness Johnson testified that on the evening before the death of deceased he received a shock by turning a switch on his back gallery. The wires from which these shocks were received received their electricity through the same means as electricity was received in the bathroom of deceased. The witness Swor testified that these shocks would not have been received by the parties named had there been only 110 volts of electricity passing over the secondary wires. This testimony indicated that there was something wrong with the transformer for several days prior to the death of deceased. Appellee testified that, a few minutes before the death of deceased, she attempted to connect her electric iron with the socket in her kitchen and received a slight shock, and that her husband experienced the same in attempting to make this connection, and she thereupon requested him to make the connection in the bathroom, stating to him that the electrician had put a porcelain socket in the bathroom; and that her husband went into the bathroom, and immediately thereafter he was heard to cry out, and the iron fell to the floor. Upon turning toward the bathroom, she discovered him lying upon the floor, and he was dead. The evidence showed that he died from an electric shock.

Mrs. Taylor, a neighbor of appellee, testified that she heard a scream, and went at once to the home of appellee, and found the deceased lying upon the bed, where he had been placed, and that he appeared to be dead; that she went into the bathroom, and noticed the iron lying upon the floor, and that

the linoleum was being burned; that she did not try to disconnect the iron in the bathroom, but went at once to the back porch, and tried to disconnect the electric current that entered the house, by the use of the switch placed there for that purpose; that she started to take hold of the little black handle of the switch, for the purpose of disconnecting the current,·and that in doing so she received a shock which almost threw her to the ground; that her finger was blistered; and that she suffered from the shock for 24 hours. The witness Swor testified that this would not have occurred if there had not been an excessive current passing over the wire; and witnesses for appellant did not dispute this, but surmised that Mrs. Taylor was mistaken in supposing that she took hold of the handle used for throwing the switch.

The deceased was burned on one of his fingers, the burn being about an inch long and as broad as a lead pencil. The testimony of the witness Swor is to the effect that this would not have occurred had there not been an excessive current passing over the wire at the time deceased connected the iron with the socket in the bathroom.

The undisputed testimony shows that the inside wiring of the house was not in any manner out of repair. It also shows that the electric iron was not out of repair, and that 'the same wire and the same iron have been used continuously from the death of deceased up to the time of trial without being in any manner repaired.· It was further shown that the wires where the limb had been burned by the electric current had recently been repaired, and the evidence indicates that this repair was being done at the very time of the death of deceased. The employé referred to was Mr. Swindle. He testified that he put in some new wire, for the reason that the insulation had been worn off of the wire passing over the limb of the tree, but that he did not find the transformer out of repair, and that he did not repair the same.

With reference to the testimony of this witness, Miss Susie Mooty, a witness for appellee, testified as follows:

"I know Mr. Swindle, the gentleman who has been working for the Texas Power & Light Company in Temple. I had a conversation with him Monday afternoon in the Temple Electric store, in which I asked him this question, in substance, 'What are you going to say if they ask you what trouble you found?' and he replied, in substance, 'I do not know; I would be up against it; I would then have to say whether I was for the company or Mrs. Bristow.'"

His testimony given on the trial of this case showed that he was for the company; and the jury might have disbelieved the same and have found from all of the facts and circumstances that the transformer was out of repair, and that this witness repaired the same immediately after the death of Bristow. They might further have found that in attempting to repair the transformer he temporarily put it in such condition as to transmit a much more excessive current than had been·passing over it for the few days previous.

The test made by the volt meter hereinabove referred to was about an hour after the death of Mr. Bristow, and it might well be inferred that in the meantime the witness Swindle had repaired the transformer, and therefore that the volt meter showed only 110 volts at the time of the test, though there might have been a much stronger current at the time of the death of the deceased.

Dr. A. C. Scott, witness for appellee, testified:

"With the iron in proper condition, with the amperage that is used on those instruments and with the current received and the voltage, you would get no shock from the iron. If a man attached that plug and socket end to a porcelain socket in perfect condition, and the iron is in perfect condition and the·connection to the socket and the balance of the connection in perfect condition electrically, with 110 volts he would get no shock. If those were the conditions, the socket in perfect condition, and insulated against 110 volts and a man was in good health, never had any sickness, nor had trouble with his heart, perfect health, goes into a bathroom, immediately heard to fall and scream, and I saw a burned place on his hand, barring the fact that he might have died from apoplexy or heart trouble, it would be fair to assume that he had gotten an electric shock. I do not know whether it is a fact that in practical operation and experience electric linemen come in contact with 110 volts every day in practically every town they operate. They may. They come in contact with it occasionally. I come in contact with it myself."

[6] The testimony referred to, we think, is sufficient to sustain the verdict of the jury that the deceased came to his death by reason of receiving a shock from an excessive current of electricity. As hereinabove stated,·the doctrine of res ipsa loquitur applies when it is shown that death has been caused by. an electric shock.

[7] The testimony of appellant's experts is to the effect that a harmful current of electricity could have entered the residence of deceased only by reason of the contact of the primary with the secondary wires, or by some defect in the transformer. The testimony is not sufficient to show that the injury did not occur in either one or the other of these ways, ·but whether it did or not, the fact remains that the deceased came to his death by reason of an electric.shock resulting from an excessive voltage, and the burden was upon the appellant to show that this did not occur by reason of its negligence, and this it failed to do to the satisfaction of the jury.

This disposes of appellant's assignments Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 24,

25, 26, 27, 28, 29, 30, 31, 34, 36, 37, 38, and 39.

[8] While the court might properly have instructed the jury as to the meaning of "preponderance of the evidence," we do not think the failure to do so was harmful error, nor that the giving of the same would have materially aided the jury in arriving at a proper verdict; hence we overrule the thirteenth assignment of error.

[9] Appellant complains at the refusal of the court to instruct the jury that the burden of proof was on the plaintiff to establish the material allegations in her petition. As hereinbefore stated, the case was submitted upon special issues, and in each instance the jury was instructed to return an answer in accordance with the preponderance of the evidence, and in each instance the question propounded was, "Do you find from a preponderance of the evidence," etc. We think this was a sufficient charge as to the burden of proof.

[10] The court did not err in refusing to give appellant's special requested charge No. 2, with reference to contributory negligence of the deceased, for the reason that the same was substantially given in the questions submitted. Besides this, we do not think that there was any evidence tending to show contributory negligence on the part of deceased.

For like reason, the court did not err in refusing to submit the issue of contributory negligence on the part of appellee, Mrs. G. C. Bristow.

This disposes of the seventeenth, eighteenth and nineteenth assignments of error.

[11] We do not think there is any merit in the contention of appellant that judgment should not have been entered for appellee, for the reason that in her petition she is described as Mrs. G. C. Bristow, and the evidence showed that her name is Ola Mae Bristow. The petition alleged her name as Mrs. G. C. Bristow, wife of G. C. Bristow, deceased.

[12] In discussing the admissibility of testimony before the court, counsel for appellee stated what he understood the testimony to be, and in argument to the jury counsel stated in substance that the doctrine of res ipsa loquitur should be applied to the case. Appellant excepted to these statements of counsel. Counsel had a right to state to the court his understanding of the testimony, same being made in discussing the admissibility of testimony, and also the right to state to the jury what he conceived to be the law of the case, if it was not contrary to any instruction given by the court. In the instant case, counsel's instruction of the law was correct, but whether correct or incorrect, it would not be reversible error, if not contrary to the instructions of the court, as the same had been read to the jury before the argument began.

[13] In view of numerous decisions by our Supreme Court with reference to the discre-

tion of the jury in fixing the amount of damages in case of death by wrongful act, we cannot say, under the facts of this case, that the verdict was excessive.

For the reasons stated, the judgment of the trial court is affirmed.

⊙=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes