THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES FULLER, Appellant.

Third Department, January 25, 1979

*E. Stewart Jones, Jr.,* for appellant.

*Sol Greenberg, District Attorney (George H. Barber* of counsel), for respondent.

## OPINION OF THE COURT

GREENBLOTT, J.

Defendant was indicted on two counts of rape in the first degree, the first count charging that defendant violated subdivision 1 of section 130.35 of the Penal Law in that, on or about November 4, 1976, he engaged in forcible sexual intercourse with the complainant Dawn Greko. The second count charged defendant at the same time and place with violation of subdivision 3 of section 130.35 of the Penal Law by engaging in sexual intercourse with Dawn Greko who, at that time, was nine years old. After a jury trial, defendant was found guilty on both counts.

Defendant lived with Hazel Hotaling and her four children, one of whom is Dawn Greko. At the trial, defendant testified

that following an argument with Hazel Hotaling, he packed his belongings and left their apartment. When later informed that Hazel Hotaling was looking for him, it was his testimony that he returned to the apartment but found that she had gone out. At the request of the complainant, he left in search of Hazel Hotaling and returned at about midnight, not having found her, and went to bed.

Complainant testified that after she retired on the night in question, defendant came into her room, removed her pants, unzipped his pants, took them down and "put his private" into hers, pressing his hands down on her shoulders. She further testified that when Ethel Fuller, defendant's mother, came into the room, defendant told her to "get the hell out of here", whereupon Mrs. Fuller ran upstairs to the apartment of Hazel Hotaling's parents and woke them up. The police were called by complainant's grandmother at about 1:30 A.M. and Officer Keith C. Wells came to the scene. He testified that after questioning the complainant, he awoke the defendant, who denied having been in the bedroom with complainant. However, the officer further testified that after defendant was given his *Miranda* warnings at the Albany Police Station, defendant admitted that he was "in the bedroom with the little girl" and "in the bed".

In our opinion, the conviction under count one of the indictment should be affirmed and the conviction under count two should be reversed. The first count alleges that defendant engaged in forcible sexual intercourse with the complainant by holding her down on a bed. Although corroboration is not expressly required by the statute, defendant contends that the requirements of *People v Oyola* (6 NY2d 259) were not satisfied. In *Oyola (supra,* p 261), where the Court of Appeals held that there must be "circumstantial evidence lending credibility to the testimony of [the] child", there was no circumstantial evidence to support the child's testimony; the conviction rested solely upon the testimony of the complaining witness. Here, however, there was sufficient circumstantial evidence, consisting of the police officer's testimony of defendant's admission and Mrs. Fuller's testimony that she saw defendant in bed with the girl, both of which lend veracity to the complainant's testimony. Furthermore, *Oyola* expressly stated that "[w]here the witness has been sworn [as here], it may not be necessary to have supporting evidence of every material fact essential to constitute the crime" *(id.,* at p 263). Under these

circumstances, defendant's reliance upon *Oyola* must be rejected.

At the trial, the complainant testified that defendant held her shoulders down on her bed and put his privates into her privates. Since corroboration of every material fact is not essential (see *People v Oyola, supra,* p 263), her testimony clearly provided sufficient evidence not only on the issue of force, but also on the element of penetration.

■ The second count of the indictment requires corroboration (Penal Law, § 130.16) relating directly to at least an attempt at an act of sexual intercourse and connecting the defendant with the commission of the offense. The testimony offered by the prosecution in corroboration of the complainant's testimony was inconclusive medical testimony, the testimony of the police officer that defendant had admitted that he was in bed with the girl, the defendant's mother's testimony to the same effect, and testimony by the grandmother of the complainant that she had called the police. As a matter of law, this evidence was insufficient to directly establish an attempt at sexual intercourse by defendant. Since it did not corroborate the complainant's testimony on the question of penetration, the second count should have been dismissed at the close of the People's case.

■ Defendant further argues that the admission into evidence of extrajudicial statements by Mrs. Fuller constituted reversible error. On direct examination by the People, she testified that she saw defendant lying in complainant's bed with the complainant. On cross-examination, however, she, at one point, testified that she did not see him in the girl's room, but only in his own room. On redirect, the People introduced, for impeachment purposes, her extrajudicial statements which confirmed her direct testimony. In our view, this did not constitute reversible error. The evidence was cumulative and merely repeated what Mrs. Fuller had already testified to on her direct examination. Furthermore, this was the same witness who had been held in contempt of court when she refused to testify after being called as the first witness for the People. Since she was obviously a hostile and recalcitrant witness, the introduction of her extrajudicial statements, when viewed in this context, cannot be said to amount to reversible error.

Therefore, the conviction under count one of the indictment should be affirmed.

We have examined the other contentions raised by the defendant and find them to be without merit.

The judgment should be modified, on the law and the fact, by reversing so much thereof as convicts the defendant under count two of the indictment and that count of the indictment dismissed, and, as so modified, affirmed.

SWEENEY, J. (concurring in part and dissenting in part). While I agree and concur with the majority's conclusion that there is insufficient corroboration to sustain the second count of the indictment and it should have been dismissed, I am unable to agree that the first count should be affirmed and, therefore, dissent and join Justice STALEY's dissent that the verdict as to the first count be reversed and a new trial granted.

STALEY, JR., J. (dissenting). I respectfully dissent and vote to reverse the judgment on both counts and grant a new trial.

On the date of the alleged crime, defendant was a resident of 135 Third Avenue, Albany, New York, where he lived with one Hazel Hotaling and her four children, one of whom is the complainant, Dawn Greko, who, at the time, was nine years old.

Complainant testified that during the evening of November 3, 1976, defendant's mother, Ethel Fuller, took her and her brothers next door where they played with the kids. They returned about 10:30 P.M., and sat up for a little while with Mrs. Fuller while she played with a puzzle. Complainant and her brothers then went to bed, her bedroom being off the parlor. Thereafter, she woke up and looked out the window, and saw defendant's car, and then saw defendant lying on the side of her bed wearing a shirt and jeans. She then asked where her mother was and, when told she was not there, asked defendant to go out and look for her, which he did. She then got up and talked to Mrs. Fuller who was in the kitchen, and went back to bed and went to sleep. Later she woke up and saw defendant sitting in a chair in the parlor and heard him tell his mother to go to bed.

Mrs. Fuller was the first witness called by the prosecution. She protested that she was sick, did not know anything, and refused to identify her prior statement offered as an exhibit. She refused to look at the document, and stated she could not see, did not write and was a sick woman.

The court advised her of its power to punish her for crimi-

nal contempt pursuant to section 750 of the Judiciary Law, and further attempted to have her look at the exhibit, whereupon she again refused. She was again warned of the provisions of section 750 of the Judiciary Law, and, when she continued to refuse to look at the exhibit, the court held her in contempt and ordered her remanded to the Albany County Jail for a period of 30 days.

Dr. Richard Etkin testified that he had examined complainant at about 4:00 A.M. on November 4, 1976, and found no evidence of trauma other than some redness at the entrance to the vagina. He found no evidence of sperm or seminal fluid within the vaginal area. In the absence of any presence of sperm, tearing or bleeding, he could only testify that the redness was consistent with intercourse, as well as some other cause, such as tight pants. He testified that complainant was calm, and did not bear any bruises, scrapings or abrasions, even in the area of her shoulders.

Dr. Etkin also stated that his findings were equally consistent with the existence or nonexistence of sexual intercourse. Complainant had previously been permitted to testify, over defense objection, that she had had intercourse with defendant on two prior occasions. This was denied by defendant.

The first count of the indictment, charging a violation of subdivision 1 of section 130.35 of the Penal Law, generally does not require corroboration, and the defendant may be convicted by complainant's testimony alone. The second count charging a violation of subdivision 3 of section 130.35 of the Penal Law in that defendant engaged in sexual intercourse with a female who was at the time less than 11 years old, does require corroboration (Penal Law, § 130.16).

Under section 130.16 of the Penal Law, the corroboration must relate directly to at least an attempt at an act of sexual intercourse and connect the defendant with the commission of the offense or its attempt. At the close of the People's case, the only evidence which had been introduced was the complainant's testimony, the inconclusive medical testimony, the testimony of the police officer of the alleged admission by the defendant that he was in the bedroom with the little girl, in the bed, and the testimony of the complainant's grandmother to the effect that she had called the police. It is questionable if this evidence was sufficient to establish an attempt at sexual intercourse by the defendant, and did corroborate the testimony of the complainant.

Although defendant concedes that under the provisions of section 130.16 alone, the charge of forcible rape contained in the first count of the indictment does not require corroboration, he contends that such corroboration is required when the complainant is less than 12 years old under the Court of Appeals expansive interpretation of CPL 60.20. CPL 60.20 provides that a child less than 12 years old may not testify under oath, unless that court is satisfied that he understands the nature of the oath, and that a defendant may not be convicted of an offense solely upon the unsworn evidence of a child less than 12 years old.

The complainant here was examined by the court prior to testifying, and the court was satisfied that she understood the nature of the oath and permitted her to testify as a sworn witness.

In the case of *People v Oyola* (6 NY2d 259), the defendant was convicted of the crime of causing the morals of a child under 16 years of age to become depraved. The court noted that the said charge did not require corroboration of the testimony of the complainant.

"The absence of legislation requiring other evidence to support the testimony of the complainant extending to every material fact essential to constitute the crime, as in case of rape *(People v. Downs,* 236 N. Y. 306; *People v. Page,* 162 N. Y. 272, 274) does not signify that courts fail to scrutinize with special care the same type of testimony in view of the ease with which crimes of this nature are charged and the difficulty of disproving them * * *.

"In a series of decisions, however, where the infant complainant was sworn, this court has reversed convictions on charges of this nature and dismissed indictments or informations as not proved beyond a reasonable doubt on the records before the court, which depended upon the testimony of the complaining witness alone * * *.

"Where the witness has been sworn, it may not be necessary to have supporting evidence of every material fact essential to constitute the crime, but the courts are not automatons of the Legislature to such a degree as to make patchwork of the law by being obliged to require full corroboration in instances where the trial court has taken the unsworn statement of the witness, but at the same time being compelled to dispense with all objective verification where an oath has been administered." *(Id.,* pp 262-264.)

In *People v Porcaro* (6 NY2d 248), a judgment of conviction for the crimes of first degree sodomy, second degree assault and impairing the morals of a minor was reversed. Judge FULD, in his concurring opinion, stated (pp 252-253): "I would place my decision upon the ground that, as a matter of law, no conviction for impairing the morals of a child may validly rest on the uncorroborated testimony of the child victim. * * * [It] is noteworthy that no morals conviction based solely on the unsupported testimony of a child, sworn or unsworn has ever survived in this court."

In the case of *People v Nisoff* (36 NY2d 560, 567), the Court of Appeals, in discussing the holding in *People v Porcaro (supra),* stated: "In support of his argument that the very nature of the crime of public lewdness requires that it be corroborated, the appellant relies heavily upon than Judge FULD's concurring opinion in *People v Porcaro* (6 NY2d 248, 252, *supra),* in which it was stated that this court was not precluded from making corollary provisions regarding corroboration where judicial experience indicates the necessity to do so in order to safeguard the rights of the accused. The defendant in that case was charged with sodomy and impairing the morals of a child, and, at the time of his conviction, neither of these crimes was required to be corroborated. The majority opinion in *Porcaro,* addressing itself to the quality of the proof, held that the sworn testimony of the 10-year-old victim, which was the *only* evidence against the defendant, was 'not of the clear and convincing kind which is necessary in order to sustain a conviction of this type' (p 252)."

Thus, it is apparent that even in prosecutions where corroboration is not required, where the complainant is under 10 years of age, it is essential to support her testimony with competent evidence to ensure that the crime charged is proved beyond a reasonable doubt.

One of the main essentials in proving the crimes charged here is the act of penetration of the complainant by the defendant. The only direct evidence of penetration is the complainant's own testimony that the defendant put his penis in her private parts. The only other evidence presented by the People on the issue of penetration is Dr. Etkin's ambiguous testimony. The testimony of Officer Wells concerning defendant's admission that he was in the complainant's bed is not evidence of attempt, penetration or identification, but merely of opportunity.

The testimony of Dr. Etkin fails to provide any proof on the issue of penetration. There is no evidence supporting the testimony of the complainant that defendant engaged in sexual intercourse with her.

Moreover, the verification of the infant's testimony required by *People v Oyola* (6 NY2d 259, *supra)* is entirely lacking on the element of force. The only evidence of any force by the defendant is the complainant's testimony that defendant held her shoulders down on the bed. Dr. Etkin testified that there was no evidence of any bruises or indication of force. The record is wholly devoid of any other indication of force. While the proof established the opportunity, it did not sufficiently establish the act, and, on the record, it must be concluded that it is questionable whether the objective verification of the infant's testimony, required by *People v Oyola (supra),* has been supplied.

Defendant further contends that the trial court erred when it received in evidence statements of Mrs. Fuller after she was recalled as a witness by the prosecution during the defendant's case. The statements consisted of her testimony before the Grand Jury, her testimony at the preliminary hearing, and her statement signed on November 4, 1976, all of which were offered for impeachment purposes. These statements contradicted Mrs. Fuller's testimony on cross-examination after she had testified on direct examination as a rebuttal witness for the prosecution. Defendant contends that there was no proper foundation established for the introduction of these statements, and that the testimony of this witness was not so damaging as to permit the prosecution to impeach the credibility of its own witness.

In a criminal case, the right to introduce a prior written or oral statement for purposes of impeaching a party's own witness is governed by CPL 60.35 which provides, in relevant part, as follows:

"1. When, upon examination of the party who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove the position of such party, such party may introduce evidence that such witness has previously made either a written statement signed by him or an oral statement under oath contradictory to such testimony. * * *

"3. When a witness has made a prior signed or sworn statement contradictory to his testimony in a criminal pro-

ceeding upon a material issue of the case, but his testimony does not tend to disprove the position of the party who called him and elicited such testimony, evidence that the witness made such prior statement is not admissible, and such party may not use such prior statement for the purpose of refreshing the recollection of the witness in a manner that discloses its contents to the trier of the facts."

In this case, the witness, on direct examination, testified that on the night in question she saw defendant lying on the complainant's bed, and Dawnie was on the bed. She further testified "I thought he was doing it by himself because he couldn't touch the baby then, and I thought he was playing by himself in that room and playing with himself. And that's what I saw."

On cross-examination, she stated that when she looked into the bedroom, he was by himself; he was not near Dawn; he was not touching Dawn; and it was too dark; and she could not see into the room. She later testified on cross-examination that she did not see him in the complainant's room, but only in his own room. On redirect examination, the prosecution immediately sought to introduce into evidence her prior sworn statement to the police, her prior testimony before the Grand Jury, and her prior testimony at a preliminary hearing. The only foundation for their admission was her previous identification of her signature, and the fact that she remembered having testified before the Grand Jury, and at the preliminary hearing.

This evidence was admitted by the court under the rule of *People v Fitzpatrick* (40 NY2d 44), the court stating: "It's used wholely and solely for the purpose of impeaching the credibility of this witness, in view of her testimony on cross-examination. We will receive that for that limited purpose."

CPL 60.35 clearly limits the right to impeach to a situation where testimony is elicited tending to disprove the position of a party "upon examination by the party who called him" and who "elicited" such testimony. Thus, that section does not permit the impeachment of a party's witness when the damaging testimony is elicited by the other party on cross-examination.

*People v Fitzpatrick (supra)* does not enlarge the right to impeach to include testimony elicited upon cross-examination. That case interpreted the words "which tend to disprove the position of such party" contained in CPL 60.35 as meaning

that impeachment of a party's own witness is permitted "only when the testimony of the witness in court *affirmatively damages* the case of the party calling him." *(Id.,* p 51.)

In that case, a witness for the People on direct examination testified to the effect that he could not recall the events in question, and the court held that such testimony did not tend to contradict or disprove any testimony or other factual evidence presented by the prosecution, and that the use of out-of-court statements by this witness to impeach him was error of sufficient magnitude to require reversal.

Even assuming that the prior statements of this witness were admissible, further error was committed in failing to properly lay a foundation for their admission, and in failing to call the witness' attention to the inconsistencies between her prior statements and her testimony on cross-examination, thereby precluding any correction or explanation by her *(Larkin v Nassau Elec. R. R. Co.,* 205 NY 267; *People v Weldon,* 111 NY 569; Richardson, Evidence, [Prince—10th ed], § 502).

The admission in evidence of Mrs. Fuller's statement and testimony before the Grand Jury, and at the preliminary hearing, which corroborated, in some degree, the testimony of the complainant was sufficient error to require reversal.

Since there was a failure to prove, by probative legal evidence, corroboraion on the first count and verification on the second, the defendant is entitled to a new trial.

MAHONEY, P. J., and KANE, J., concur with GREENBLOTT, J.; SWEENEY, J., concurs in part and dissents in part in an opinion; STALEY, JR., J., dissents and votes to reverse in a separate opinion.

Judgment modified, on the law and the facts, by reversing so much thereof as convicts the defendant under count two of the indictment and that count of the indictment dismissed, and, as so modified, affirmed.