OPINION OF THE COURT
Fuchsberg, J.
We hold that, in the absence of any statutory requirement for corroboration, consonant with the reflection of social attitudes in prevailing legislative policy, the sworn testimony of a child complainant under the age of 12 need not be corroborated in a prosecution for her forcible rape. We also conclude that, in the circumstances of this case, defendant’s guilt was proved beyond a reasonable doubt.
Defendant James Fuller was convicted upon a jury verdict of two counts of first degree rape growing out of a single criminal episode. The indictment was brought on two theories, that he "engage[d] in sexual intercourse with a female by forcible compulsion” (Penal Law, § 130.35, subd 1), and that the act was committed upon "a female who [was] less than eleven years old” (Penal Law, § 130.35, subd 3).
The facts, as they emerged at trial, were as follows:
The 38-year-old defendant lived in a common-law relationship with the mother of four children, one of whom, 10-year-old Dawn, was the complainant. At trial, after the court had conducted a voir dire to satisfy itself that she understood the nature of an oath (CPL 60.20 subd 2),[1] Dawn was sworn and testified to the event which precipitated the defendant’s arrest. According to the child, on the night of November 3, 1976, after she had gone to bed, the defendant came into her room, removed her pants and "put his private in * * * my private” while forcefully pressing her shoulders down on the bed. The complainant testified further that, while this was going on, *632 she tried to maneuver her body away from the defendant and then started crying. It was at that juncture, Dawn went on, that defendant’s mother, Ethel Fuller, who was babysitting in the same building, entered the room only to be ordered "to get the hell out” by the defendant.
Shortly thereafter, a third person, to whom the mother related what she had observed, called the police. Upon their arrival, the arresting officer later told the jury defendant after receiving Miranda warnings, admitted that "he was in bed in the bedroom with the little girl”. Also introduced at trial was evidence that a doctor, who shortly after the incident examined young Dawn, found a redness at the entrance to the vagina consistent with though not necessarily produced by a fresh act of intercourse. He was unequivocal, however, in his testimony that her hymen was gone, a condition the time of whose creation remained somewhat clouded by Dawn’s statement to the doctor, and eventually to the trial court and jurors, that she had engaged in intercourse with the defendant on at least two prior occasions.
Taking the stand in his own defense, the defendant denied that he had ever engaged in sexual intercourse with Dawn and denied making the inculpatory statement to the police. On both direct and rebuttal, Mrs. Fuller was called by the People under circumstances which we hereinafter recite.
On appeal, the Appellate Division modified the judgment by reversing and dismissing on the nonforcible count because the complainant’s testimony lacked the corroboration necessary to sustain a conviction of that offense (Penal Law, § 130.16);[2] it otherwise affirmed (66 AD2d 27). On the present appeal to this court, leave for which was granted by a Justice of the Appellate Division, defendant contends that he is entitled to reversal of the remaining count because the conviction depended entirely on the uncorroborated testimony of the 10-year-old *633 complainant and because the proof fell far short of that required by the beyond a reasonable doubt standard. He also assigns as reversible error, inter alia, the District Attorney’s use for impeachment purposes of Ethel Fuller’s prior inconsistent statements. For the reasons that follow, the determination of the Appellate Division should be upheld.
We begin by noting that when the offense of rape in the first degree is committed by an act of forcible compulsion (Penal Law, § 130.35, subd 1), as opposed to an otherwise unforced act of intercourse with one who, because of age, is rendered incapable of consent (id., subd 3), the Legislature has not seen fit to impose any requirement that the victim’s testimony be corroborated (cf. People v Bianchi, 55 AD2d 993). So much is obvious, as defendant concedes, from the limitation of section 130.16 to instances in which "lack of consent * * * results solely from incapacity to consent because of the alleged victim’s age” (emphasis mine). However, relying on People v Porcaro (6 NY2d 248) and People v Oyola (6 NY2d 259), defendant argues that a 10-year-old complainant’s understanding of an oath is necessarily so doubtful that a similar requirement of corroboration must be imposed.
But Oyóla and Porcaro are not to be read so broadly. Both cases were decided by sharply divided courts and in neither was a requirement of corroboration decisive.
Oyóla involved a conviction for impairing the morals of a minor and for assault committed on a 10-year-old girl. True, the three Judges who joined in the plurality opinion for reversal, after noting that existing legislation imposed a corroboration requirement both for rape cases involving adult females and for all cases involving the unsworn testimony of a child under 12, were critical of the statutory scheme to a point where it could be inferred that they favored either legislative or judicial adoption of a similar rule for cases like the one before them (People v Oyola, supra, at pp 262-264).
But they did not venture to do so. Instead, after an extensive analysis of the quality of the prosecution’s evidence, citing People v Ledwon (153 NY 10), they chose to ground their decision on the fact "that appellant has not been proved guilty of the offenses charged beyond a reasonable doubt” (People v Oyola, supra, at p 265). The three dissenting Judges, after expressly recognizing that no corroboration was necessary, premised their own position for affirmance on the ground that the evidence was sufficient to convict (id., at pp *634 265-269). The seventh Judge, in his concurrence, would have invalidated the conviction because the child victim’s testimony was uncorroborated (People v Porcaro, 6 NY2d 248, 252, supra). Thus, it can be said that while four Judges might be viewed as sympathetic to a corroboration rule, only one of the seven on the court was ready to adopt it.
In Porcaro, like Oyóla, the defendant had been convicted of impairing the morals of a minor and the evidence consisted entirely of sworn testimony by a 10-year-old child. Again three Judges voted to reverse, this time (at p 252) "[f]or the reasons stated in People v. Oyola,” in an opinion focusing on the weakness of the proof and additionally, on the fact that, though the child had been examined by a physician, the findings were never disclosed in court, and, despite repeated requests, the defendant was not allowed to have the child examined (People v Porcaro, supra, p 251). They simply concluded that the evidence was not "clear and convincing” (id., at p 252). The three Oyóla dissenters reiterated their Porcaro views (id., at pp 253-258). The seventh Judge’s rationale was also the same in both cases.
Without gainsaying that the opinions in these cases have generated some confusion, we must reject defendant’s interpretation that they impose a requirement of corroboration. For, as our analysis suggests, both Porcaro and Oyóla are best understood as cases in which the evidence was not sufficient to prove the defendant guilty beyond a reasonable doubt (People v Oyola, supra, p 261; People v Porcaro, supra, at p 252). And, subsequent decisions have limited them as "thin proof’ cases (People v Nisoff, 36 NY2d 560, 567; People v Aiss, 29 NY2d 403, 407; see People v Cipollina, 21 AD2d 981; Younger, Requirement of Corroboration in Prosecutions for Sex Offenses in New York, 40 Fordham L Rev 263, 274). Aside from the testimony of the child complainant in both cases — and there were background circumstances that strongly suggested a motive to falsify[3] — there was nothing else. Thus, what defendant construes as the missing "corroborative” evidence in *635 these cases, was nothing peculiar to either sex offenses or child witnesses, but, in fact, no more than the additional quantum of proof necessary in any criminal prosecution to sustain a conviction. As Porcaro and Oyóla therefore illustrate, there may be instances in which an infant’s sworn testimony will be undermined to such a degree, either by an apparent motive to fabricate or by its own inherent improbability or inconsistency, that it cannot, standing by itself, amount to proof beyond a reasonable doubt.
Moreover, whatever intimations those decisions may contain in the direction of a judicially imposed corroboration rule must be considered in light of the statutory requirements of corroboration which then existed. Though at common law the uncorroborated testimony of the female victim in any sex offense case was sufficient to support a conviction (7 Wigmore, Evidence [Chadbourn rev ed], § 2061, p 451), corroboration requirements came to be introduced by statute to protect against the perceived danger of false accusations, easy to make but difficult to rebut (see People v Friedman, 139 App Div 795; 7 Wigmore, Evidence [Chadbourn rev ed], § 2061, pp 456-457). On this rationale, the former Penal Law required that for several crimes, including rape, every material element of the crime established by the female victim’s testimony had to be corroborated (Penal Law of 1909, § 2013). Seemingly at odds with this, there was no statutory corroboration requirement of any kind for the sworn testimony of a child in prosecutions for sodomy, incest, carnal abuse or impairing the morals of a minor (see Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 130.16, p 456), a situation with which, as we have seen, the Oyóla court seemed to be wrestling (6 NY2d, at p 262).
But, even if it be thought that the Oyóla decision intended to effect a harmonization among these statutes, the intervening décades have witnessed revisions in the statutory corroboration rules that, in turn, manifest a marked change in legislative policy.[4] Responding to more enlightened social atti *636 tudes, particularly the movement toward equality for women, and concern about the increasing incidence of sex crimes, the Legislature has abandoned almost all of the corroboration requirements, nurtured as they were largely in an unfair skepticism of the testimony of the women who were the victims of these crimes, and because, in practice, stringent corroboration standards were unrealistic given that such offenses are generally committed beyond the purview of other witnesses (see Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 130.16, pp 456-458; Governor’s Approval Memorandum, L 1974, ch 14, NY Legis Ann, 1974, pp 371-372; cf. CPL 60.42). Significantly, the only one that remains, though, as we have seen, not relevant here, is strictly limited to cases falling within the narrow compass of a lack of consent due purely to “age, mental defect, or mental incapacity”. (Penal Law, § 130.16.)
In all other instances, including prosecutions for the most serious offenses in the Penal Law, the only qualification that remains is the one set out in CPL 60.20 (subd 3). Unchanged in the face of all the revisions, it continues the long-standing rule that the necessity for corroboration of the testimony of a child under the age of 12 rests solely on whether, as determined by the Judge before whom the testimony is to be given, the child understands the nature of an oath. Age alone is no testimonial infirmity (see Wheeler v United States, 159 US 523, 524 [five year old may be competent witness in a murder case]; Rittenhouse v Town of North Hempstead, 11 AD2d 957 [nine and one-half-year-old child not absolutely disqualified from testifying to event he observed at 3 years, 10 months]; 6 Wigmore, Evidence [Chadbourn rev ed], § 1821).
 These precepts in mind, in this case Dawn’s detailed testimony established every element of the rape, including defendant’s use of force in pressing her shoulders down against the bed so that her efforts at wriggling away from him were unsuccessful. She also attested to the fact of penetration. And her recitation that the defendant had previously committed other acts of intercourse upon her were admissible to show defendant’s amorous design (People v Thompson, 212 NY 249, *637 252-254; see People v Bouton, 50 NY2d 130, 140). Notably, there was nothing in this case to caution against reliance upon her testimony. Despite an extensive and competent cross-examination, it was strong and it was unshaken. Therefore, even if it stood alone, against the defendant’s mere denial of the facts Dawn’s testimony would have been enough for a jury to have found proof of guilt beyond a reasonable doubt.
But here there was much more than this. The physician’s testimony, the defendant’s confession to the police and the testimony from the defendant’s own mother as to how she had happened upon her son in the girl’s bedroom that night and what she saw and heard there, these were all telling.
We turn now briefly to consider defendant’s contention that the trial court committed reversible error in allowing the prosecutor to introduce prior inconsistent statements to impeach Ethel Fuller.
The witness was the first to be called on the prosecution’s case but, apparently to the surprise of the District Attorney, after answering a few preliminary questions, she staunchly refused to respond in any meaningful fashion to further inquiries. She did not merely state that she could not recollect the events of that evening. Rather, by an unending litany of responses, which varied only among "I don’t know”, "I couldn’t say” and "I can’t tell you anything”, the witness manifested a conscious intent to frustrate the People’s case. Moreover, when, in response to prosecutor’s attempt to refresh her recollection, the witness would not even look at her prior Grand Jury testimony even in the face of an express direction from the court that she do so, she was held in contempt and withdrawn from the stand.
Nevertheless, in rebuttal to the defendant’s testimony, the People recalled Ms. Fuller, who this time stated, consistent with her sworn and written pretrial statements, that on the night in question she heard noises emanating from Dawn’s bedroom and saw the defendant lying on the bed, Dawn in tears. On cross-examination, though, the witness recanted this version, several times responding that she only observed the defendant alone in his own bedroom that night. It was after this, on redirect, that the prosecutor was permitted to introduce, over defense objection, prior inconsistent statements she had made, namely a brief signed transcript of her initial interview with the police and the relevant portions of her *638 testimony before the Grand Jury and at the preliminary hearing.
Defendant claims that impeachment of the prosecutor’s own witness fell outside the bounds of CPL 60.35 (subd 1), which allows prior written or sworn statements to be introduced for that purpose only "[w]hen, upon examination by the party who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove the position of such party” (see People v Fitzpatrick, 40 NY2d 44, 48). Even assuming that the witness’ testimony on cross-examination "tend[ed] to disprove” the People’s position, there was no literal compliance with the statute’s requirement that the damaging statements be given "upon examination by the party who called [her].”[5]
However, we agree with the majority opinion of Mr. Justice Greenblott at the Appellate Division that, considered in the context in which it occurred, the use of the impeaching matter must be said to have been harmless (see People v Dackowski, 50 NY2d 962; cf. People v Jordan, 59 AD2d 746, 747; Lipinski v New York, 557 F2d 289, cert den 434 US 1074). The substance of the prior inconsistent statements was nothing more than what Ms. Fuller’s direct testimony contained (cf. People v Berzups, 49 NY2d 417, 425-426). And, of course, insofar as her answers on cross-examination had conveyed to the jury her discrepant versions of the same event, the witness’ credibility had already been impeached. Moreover, the jury was thereafter instructed that it could not consider the prior inconsistent statements as evidence in chief but only on Ms. Fuller’s credibility (CPL 60.35, subd 2). Finally, the quality and completeness of the complainant’s testimony, the medical proof of redness in the area of her vagina, her missing hymen, her prior sexual experiences with the defendant, and *639 the defendant’s own inculpatory statement, added up to overwhelming evidence of defendant’s guilt (People v Crimmins, 36 NY2d 230, 242).
In concluding, we also note that, having considered the other points raised by the defendant, we find them lacking in merit.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
Order affirmed.

. CPL 60.20 (subd 2) provides in pertinent part: "A child less than twelve years old may not testify under oath unless the court is satisfied that he understands the nature of an oath. If the court is not so satisfied, such child or such witness over twelve' years old who cannot, as a result of mental disease or defect, understand the nature of an oath, may nevertheless be permitted to give unsworn evidence if the court is satisfied that the witness possesses sufficient intelligence and capacity to justify the reception thereof’. Subdivision 3 goes on to say that "[a] defendant may not be convicted of an offense solely upon unsworn evidence given pursuant to subdivision two”.

. The statute in its entirety, reads as follows:
"A person shall not be convicted of consensual sodomy, or an attempt to commit the same, or of any offense defined in this article of which lack of consent is an element but results solely from incapacity to consent because of the alleged victim’s age, mental defect, or mental incapacity, or an attempt to commit the same, solely on the testimony of the alleged victim, unsupported by other evidence tending to:
"(a) Establish that an attempt was made to engage the alleged victim in sexual intercourse, deviate sexual intercourse, or sexual contact, as the case may be, at the time of the alleged occurrence; and
"(b) Connect the defendant with the commission of the offense or attempted offense.”

. The Oyóla court pointed out that the child’s version of the incident had been rehearsed under her mother’s direction at least five times before the story was told to anyone else. In addition, the mother’s lawyer had instructed the child "to remember that she would have to repeat the same testimony in a matrimonial action against her father” (People v Oyola, 6 NY2d 259, 261, supra). Similarly, in Porcaro, a matrimonial dispute lurking in the background made the court manifestly skeptical of the child’s story (People v Porcaro, supra, at p 251; see People v Nisoff, 36 NY2d 560, 567, supra).

. Perhaps taking heed of this intimation in Oyóla, when the Legislature revised the Penal Law in 1967, it extended the requirement of corroboration of the elements of penetration and identity to a broad range of sex offenses defined in article 130 (Penal Law, § 130.15), eventually including endangering the welfare of a child. Largely because of the resulting difficulties in securing convictions for sex crimes (see Ludwig, Case for Repeal of the Sex Corroboration Requirement in New York, 36 Brooklyn L Rev 378, 386), the corroboration rules were amended in 1972 to require merely some evidence tending to establish attempt to engage in the proscribed sexual *636 conduct and lack of consent where this was an element of the crime (Pitler, "Existentialism” and Corroboration of Sex Crimes in New York, 24 Syracuse L Rev 1). Continuing to move in that direction, in 1974, section 130.15 was repealed and replaced with section 130.16, which eliminates any need for corroboration except in a few limited instances (see n 2, supra).

. Of course, it may be argued that Ms. Fuller’s role as a witness at the trial is not to be segmented and that both of her trips to the stand should be treated as a whole in determining whether the statutory standards have been met. So considered, her persistent refusal to answer questions propounded by the District Attorney in fact may have foreordained the nature of her responses on cross-examination. And it may raise the interesting issue of whether the patently evasive and contumacious responses on direct were so clearly intended to affirmatively damage the People’s case as to equate it with conventional testimonial conduct (see People v Fitzpatrick, 40 NY2d 44, 52 [mere failure to recall not affirmative damage]; but cf. People v Schenkman, 46 NY2d 232; People v Pomerantz, 46 NY2d 240). But, because of the ground on which we dispose of the CPL 60.35 issue, we have no need to pass on the merits of such an argument here.